O

# United States District Court
# Central District of California

| | |
|---|---|
| CARIBE RESTAURANT & NIGHTCLUB, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOPA INSURANCE COMPANY,<br><br>Defendant. | Case № 2:20-cv-03570-ODW (MRWx)<br><br>**ORDER GRANTING MOTION TO DISMISS [61]** |

## I.  INTRODUCTION

Plaintiff Caribe Restaurant & Nightclub, Inc. ("Caribe") initiated this class action against Defendant Topa Insurance Company ("Topa") alleging breach of contract and seeking declaratory judgment for insurance coverage. (First Am. Compl. ("FAC"), ECF No. 57.) Topa moves to dismiss. (Mot. to Dismiss ("Motion" or "Mot."), ECF No. 61.) The matter is fully briefed. (*See* Opp'n, ECF No. 66; Reply, ECF No. 67.) For the reasons below, the Court **GRANTS** the Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[2]

Caribe owns and operates La Luz Ultralounge ("La Luz"), a restaurant and nightclub located in Bonita, California. (FAC ¶ 1.) Caribe purchased an insurance policy ("Policy") from Topa for the policy period of May 18, 2019, through May 18, 2020. (*Id.* ¶¶ 2, 20; *see* Compl. Ex. A ("Policy"), ECF No. 7.)[3]

In March 2020, due to the COVID-19 pandemic, the State of California and County of San Diego ordered "the closure of bars" and "bann[ed] onsite dining." (FAC ¶¶ 35–37.) In May 2020, San Diego County "permitted the resumption of onsite dining" subject to restrictions. (*Id.* ¶ 36.) Caribe alleges that, as a result of these civil authority orders, it was forced to "suspend or reduce business" at La Luz. (*Id.* ¶ 8.) Caribe also alleges that COVID-19 "impaired Caribe's property by making it unusable in the way that it had been used before." (*Id.* ¶ 10.)

Caribe alleges that its losses are covered under the Policy and identifies four specific provisions: "Business Income"; "Extra Expense"; "Civil Authority"; and "Duties in the Event of Loss" (referred to as the "Sue and Labor" provision). (*Id.* ¶¶ 3–6, 54–88.) Caribe filed claims for coverage under these provisions, which Topa denied. (*Id.* ¶¶ 15, 42.) Accordingly, Caribe commenced this litigation against Topa asserting that denial of coverage was a breach of contract and seeking declaratory judgment. (*See* FAC.) Topa's motion to dismiss followed. (*See* Mot.)

---

[2] All factual references derive from Plaintiff's FAC, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[3] Although the FAC superseded the Complaint, Caribe does not include the Policy with the FAC. (*But see* FAC ¶ 20 (mistakenly indicating the Policy is "attached hereto as Exhibit A")). Nevertheless, it is appropriate to consider the Policy under the incorporation by reference doctrine. (*See* FAC ¶ 20; Mot. 2 n.2); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (discussing that a document may be incorporated by reference if neither party disputes its authenticity and the pleading necessarily relies on the document). As the Policy is a compiled document with internally repeating pagination, the Court cites to the CM/ECF pagination at the top of each page of this document.

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim showing the pleader is entitled to relief. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings in ruling on a Rule 12(b)(6) motion but may consider "attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). When considering the pleadings, a court must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading

could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

Topa argues the Policy provisions Caribe cites provide coverage only for "direct physical loss of or damage to" Caribe's property and Caribe cannot recover under any of these provisions because it fails to allege "any 'direct physical loss' of or damage to" the insured premises. (Mot. 1.) Caribe, on the other hand, insists that it has sustained "direct physical loss" of its property because it was "forced to suspend or reduce business at its location due to COVID-19" and the resultant safety orders. (Opp'n 1, 5.) The Court agrees with Topa for the following reasons.[4]

To begin, every Policy provision at issue contains language conditioning recovery on physical loss or damage to the property. (*See* Policy 42–43.) Indeed, the Business Income provision states that coverage is contingent on "the necessary 'suspension' of [business] 'operations'" caused by "*direct physical loss of or damage to* [the insured] property." (Policy 42 (emphasis added).) Similarly, Extra Expense coverage is available only for losses that the insured "would not have incurred if there had been no *direct physical loss or damage to* property." (*Id*. (emphasis added).) The Civil Authority provision also provides coverage only for losses caused by an "action of civil authority that prohibits access to the described premises . . . [due to] dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss [i.e., the *direct physical loss*] that caused the damage." (Policy 16, 43.) And the Sue and Labor provision merely provides the insured's duties to mitigate losses "in the event of loss or damage" to the property covered by another provision of the

---

[4] As the Court finds the failure to allege direct physical loss or damage dispositive, it need not consider the parties' additional arguments, and declines to do so.

Policy. (Policy 35–36.) Thus, the question here becomes whether Caribe has alleged "physical loss or damage" sufficient to trigger coverage under one of these provisions.

Under California law,[5] "losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase." *10E, LLC v. Travelers Indem. Co. of Conn.*, 483 F. Supp. 3d 828, 835–36 (C.D. Cal. 2020). Further, only a "distinct, demonstrable, physical alteration" of property will amount to physical loss or damage that may trigger coverage. *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010). "Detrimental economic impact" alone is insufficient. *10E*, 483 F. Supp. 3d at 836. Several courts in this jurisdiction have recently considered cases with facts nearly identical to this one, and these courts have reached a consensus—where an insurance policy conditions recovery on "direct physical loss or damage," *economic business impairments* caused by COVID-19 safety orders *do not fall within the scope of coverage*. *10E*, 483 F. Supp. 3d at 835–37; *see, e.g.*, *Mark's Engine Co. No. 28 Rest., LLC v. Traveler's Indem. Co. of Conn.*, No. 2:20-cv-04423-AB (SKx), 2020 WL 5938689, at *3–5 (C.D. Cal. Oct. 2, 2020) (holding a business could not recover for pandemic-related economic losses under an insurance policy requiring "direct physical loss" or "direct physical damage" for coverage), *appeal filed* No. 20-56031 (9th Cir. Oct. 6, 2020); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, No. 2:20-cv-05663-VAP (DFMx), 2020 WL 6440037, at *4–7 (C.D. Cal. Oct 27, 2020) (same).

Here, the Policy provisions on which Caribe relies clearly condition recovery on physical loss or damage to the insured premises. (*See* Policy 42–43.) But Caribe

---

[5] It is undisputed that California law governs this case. *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("[In] a diversity action the law of the forum state, California, applies."). Under California law, "interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). When "interpreting a policy provision, [courts] must give its terms their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (internal quotation marks omitted).

alleges only that COVID-19 restrictions have prevented it from using its property for normal business operations, which does not suffice. (*See, e.g.*, FAC ¶ 39 (explaining that COVID-19 "impair[ed] the function of and damage[ed] the covered property" and caused the "suspension of operations").) Nowhere in the FAC does Caribe sufficiently allege direct physical loss or damage such as would trigger coverage.[6] (*See generally* FAC.) Therefore, just as in the cases discussed above, Caribe's failure to allege direct physical loss or damage forecloses its claim to coverage under the Policy. *See, e.g.*, *10E*, 483 F. Supp. 3d at 835–37.

Nevertheless, Caribe contends "direct physical loss" should be read to encompass the type of economic business impairments it has suffered. (Opp'n 7–9 (citing *Total Intermodal Servs. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908 AB (KSx), 2018 WL 3829767, at *3–4 (C.D. Cal. July 11, 2018)).) But Caribe's reliance on *Total Intermodal* is misplaced. The *Total Intermodal* court merely held that an insured need not show lost cargo is damaged if the cargo has been permanently dispossessed. *Total Intermodal*, 2018 WL 3829767, at *3–4. That holding is entirely inapplicable to the present facts; the court in Total Intermodal acknowledged as much when it noted that "the same phrase in a different kind of insurance contract could mean something else."[7] *Id.* at *4 n.4. Moreover, even if the Policy covered permanent dispossession, which it does not, Caribe has not alleged permanent dispossession, nor could it, as COVID-19 safety orders only temporarily restricted Caribe's use of its premises. *See 10E*, 483 F. Supp. 3d at 836; *Plan Check Downtown III*, 485 F. Supp. 3d at 1231–32.

---

[6] To the extent Caribe attempts to argue that direct physical loss or damage has occurred, it has failed to do so in a non-conclusory manner.

[7] Notably, the same court that decided *Total Intermodal* later commented that "rel[iance] on . . . *Total Intermodal* [to interpret the policy language] 'direct physical loss of' [as] encompass[ing] deprivation of property *without* physical change in the condition of the property . . . would be without any 'manageable bounds.'" *Mark's Engine*, 2020 WL 5938689, at *4 (emphasis added) (quoting *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 485 F. Supp. 3d 1225, 1231 (C.D. Cal. 2020)).

While the Court is sympathetic that Caribe is suffering economically from the unprecedented COVID-19 pandemic, an economic business impairment does not qualify as a physical loss or damage to the premises. *See, e.g.*, *10E, LLC*, 483 F. Supp. 3d at 836. As Caribe does not allege direct physical loss or damage, its claims were not covered and its causes of action for breach of contract and declaratory judgment fail. Thus, the Court **GRANTS** Topa's Motion to Dismiss. Additionally, the Court finds that leave to amend would be futile because allegations of other facts consistent with the FAC could not cure these deficiencies. *See Schreiber Distrib. Co.*, 806 F.2d at 1401; *Carrico*, 656 F.3d at 1008. As such, dismissal is without leave to amend.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Topa's Motion to Dismiss Caribe's First Amended Complaint without leave to amend. (ECF No. 61.) The Court will issue judgment.

**IT IS SO ORDERED.**

April 9, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**
